J. W. WILSON, et al. v. J. G. BYNUM, Administrator, et als.

*Administrators—Petition to Sell Land for Assets—Jurisdiction—Issues.*

1. Before the Act of 1846, the lands of a decedent could not be sold to pay a debt upon which a judgment *quando* had been rendered against the administrator; but since the passage of this act, which makes the proceeds of land, when sold, assets in the hands of the personal representative for the payment of debts, a judgment *quando* may be satisfied from the proceeds of the sale of the decedent's lands.

2. Land is not assets until it is sold and the proceeds received by the personal representative.

3. *Quære*—Whether an administrator can be sued on his bond when he has been negligent in not obtaining an order to sell his intestate's land for assets.

4. Where it is necessary, and the administrator fails to take the proper steps to sell his intestate's real estate for assets, he may be compelled by the clerk to do so, or a creditor may file a creditor's bill in the Superior Court against the administrator or executor, and the heirs-at-law or devisees, for the sale of the land.

5. The Code has not taken away from the Superior Court any jurisdiction heretofore exercised by courts of equity, except, perhaps, in cases exclusively within the jurisdiction of a justice of the peace.

6. Where the complaint alleged that the plaintiff had a judgment against the estate of a decedent; that the assets of the estate were exhausted; that certain lands devised by the decedent were in the possession of his devisees, and that the personal representative had refused to apply for an order directing the sale of said land to make assets ; *It was held,* that the complaint set out a cause of action.

7. Where issues of fact are raised by the pleadings, it is error for the Judge to decide the action without submitting these issues to a jury, unless both sides consent that he shall decide the whole case, both on the law and the facts.

(*Walton* v. *Pearson,* 85 N. C., 34; *Martin* v. *Harding,* 3 Ired. Eq., 603; *Vaughan* v. *Deloatch,* 65 N. C., 378; *Hawkins* v. *Carpenter,* 88 N. C., 403; *Pike* v. *Green,* 64 N. C., 665; *Wadsworth* v. *Davis,* 63 N. C., 251; *Allison* v. *Davidson,* 1 D. & B. Eq., 46; *Simmons* v. *Whitaker,* 2 Ired. Eq., 129; *Finger* v. *Finger,* 64 N. C., 183, cited and approved).

This was a CIVIL ACTION, tried before *Graves, Judge,* at the Fall Term, 1883, of BURKE Superior Court.

The action was instituted by the plaintiffs as assignees of W. M. Walton, in behalf of themselves and all other creditors of Charles McDowell, deceased, against the defendants, John Gray Bynum, administrator, *d. b. n.* of Charles McDowell, deceased, and C. M. McLoud, administrator of N. W. Woodfin, deceased, Richmond Pearson, executor of R. M. Pearson, deceased, Samuel McDowell, T. W. Walton and wife Annie, Cora McDowell and Manly McDowell, devisees of Charles McDowell, deceased.

The plaintiffs alleged that they were the owners of the following sealed note and the judgment rendered thereon, which had been assigned to them by the obligee W. M. Walton, for value received, to-wit: "One day after date we, W. F. McKesson, as principal, and Charles McDowell and James McKesson as sureties, promise to pay W. M. Walton or order, twenty-two hundred dollars for value received. Given under our hands and seals, this 25th day of November, 1855.

(Signed),          W. F. McKESSON,       (Seal).

CHARLES McDOWELL,    (Seal).

JAMES McKESSON,      (Seal).

That no part of the note has been paid. That W. M. Walton, assignee of plaintiffs, brought suit on said bond on the 15th

of March, 1866, and at the Fall Term, 1869, obtained judgment thereon, as appears by the records of Superior Court of Burke county. That Charles McDowell died in the year 1859, leaving a last will and testament, which was duly admitted to probate in the county of Burke, in which among other things, there was a clause as follows, to-wit: "I will, give and devise to my executor, all the lands which I own, for the sole and separate use of Julia McDowell, wife of my son James C. S. McDowell, during the life-time of him, the said James, and at his death to his children, but if he dies childless, then to my grand-children, per capita." That Tod. R. Caldwell was appointed executor in this will, but renounced the executorship, and Nicholas W. Woodfin was appointed and qualified as administrator *cum testamento annexo*, of the estate of the said Charles McDowell, and gave an administration bond with John W. Woodfin, W. F. McKesson and Richmond M. Pearson as sureties. That N. W. Woodfin died insolvent, and C. M. McLoud was appointed his administrator, and John W. Woodfin and W. F. McKesson and James McKesson all died insolvent. That R. M. Pearson died leaving a large estate, and also a last will and testament, in which Richmond Pearson was appointed executor.

That upon the death of N. W. Woodfin in the year 1876, John G. Bynum was appointed administrator *de bonis non* of the estate of Charles McDowell, deceased. That James C. S. McDowell is dead, leaving the following children, viz.: Samuel McDowell, Annie, wife of Thomas Walton, Cora McDowell and Manly McDowell. The plaintiffs allege that Charles McDowell died possessed of a large personal estate which has been exhausted by the payment of debts and emancipation of slaves and other casualties of the late war, and there are no personal assets known to the plaintiffs out of which they can obtain payment of their debt, and none have come to the hands of John G. Bynum, the administrator *de bonis non*, as they are informed; but that Charles McDowell died seized of a large and valuable tract of land lying in Burke county, containing about 1,400 acres, which

he devised to his executor in trust for Julia McDowell for life, and after her death, to the children of the said James C. S. Mc-Dowell as above named, who are in the possession of the said land, and who deny that the assets of Charles McDowell were exhausted by his administrator, N. W. Woodfin, and say that he was guilty of a devastavit. They allege that they have called upon the said John G. Bynum and requested him to file a petition for the sale of the said land, which he has declined to do, and therefore they demand judgment that the land be sold to make assets for the payment of the testator's debts; and, by amendment, in as much as the said defendant's devisees, as aforesaid, deny that the assets of the estate of Charles McDowell, deceased, have been exhausted or legally applied, and allege that Woodfin, former administrator, was guilty of a devastavit, they demand that an account may be taken of the estate of Chas. McDowell, deceased, to ascertain whether the assets have been exhausted or have been legally applied, and how much, if any, assets are still in or ought to be in the hands of N. W. Woodfin, and if it appears that he is guilty of a devastavit, that plaintiffs may have judgment against his administrator and the security on his bond, to-wit: Richmond Pearson, executor of R. M. Pearson, deceased, and for such other and further relief in the collection of plaintiff's debt or claim as may be consistent with the facts found in this case."

Richmond Pearson, as executor of R. M. Pearson, filed a demurrer and alleged as grounds therefor: 1st, that no relief is prayed against him in said complaint; and, 2d, that said complaint admits that there has been no devastavit of the principal of his testator, viz.: N. W. Woodfin, administrator *cum testamento annexo* of Charles McDowell, and consequently there is no breach of the administration bond of the said Woodfin.

The other defendants, devisees, in answer to the complaint, allege that sufficient assets came to the hands of N. W. Woodfin, administrator of Charles McDowell, to pay all of the debts of his testator, but that the said Woodfin wasted and misapplied the

same, and was guilty of a *devastavit*. They denied that there are any debts existing against the estate of Charles McDowell, deceased, for which they were liable, or for which their real estate can in any way be charged or sold, to the amount of eight thousand dollars, or to any amount whatever; that the plaintiffs suffered a judgment *quando* to be entered against the administrator, instead of a judgment absolute, whereby the sureties on the administration bond were released from liability, to an amount more than sufficient to pay the debts of the testator.

John G. Bynum adopted, as part of his answer, that of the other defendants, and further alleged:

1st. That more than ten years have elapsed since the execution, if at all, of the bond sued on by the testator, and it is presumed to be paid by presumption of law;

2nd. That no cause of action has accrued to plaintiffs on said bond within ten years next preceding the beginning of this suit;

3rd. That said bond is paid or discharged by being merged in a judgment now on file in the office of Clerk of the Superior Court of Burke county;

4th. That at the time the action was commenced there was an action which is still pending between the same parties, asking the same relief in the Superior Court of Burke county.

His Honor gave judgment for the defendants, and the plaintiffs appealed.

*Mr. D. Schenck*, for the plaintiffs.
*Messrs. Reade, Busbee & Busbee, G. N. Folk* and *D. G. Fowle*, for the defendants.

ASHE, J. (after stating the facts as above). This case savors very much of a "fishing bill." It purports to be an action in nature of a creditor's bill, instituted to sell the lands devised by Charles McDowell, deceased, to the defendants, his grand-children, for the payment of his debts. The record transmitted to this Court by the appeal, interspersed as it is with amendments,

46

"at random strung," is obscure, inconsistent, and voluminous. There are no exceptions taken in the case. The complaint alleges that the assets of the estate of Charles McDowell had been exhausted by the payment of debts, and the casualties of the war—in other words that the administrator had fully and legally administered the assets; and yet in their prayer for relief, they demand that inasmuch as the defendants insist that the administrator did have assets sufficient to pay the debts of the testator Charles McDowell, and had committed a *devastavit*, that, if that fact should be so found on a reference, a judgment should be rendered in their behalf against Richmond Pearson, executor of R. M. Pearson, who was surety on the administration bond of N. W. Woodfin, and this without any allegation in the complaint of a breach of the bond; thus attempting to use the answer of the defendants to supply the deficiencies of the complaint; and, without a single exception pointing to any error, we are called upon to grope our weary way through a large mass of pleadings and record evidence, constituting a moderate sized volume, in search of errors supposed to exist. And when we come to the judgment of the Court, hoping to derive some light from that source, we are confronted with the laconic announcement "That the plaintiffs are not entitled to recover," so that it is impossible for this Court to ascertain upon what ground the judgment of the Court below was rendered; whether because the action was barred by the statute of limitations; or because the bond was merged in the judgment; or because there was another action depending between the same parties asking for the same relief; or because of any of the other defences set up by the defendants. In the absence of any light upon the subject, we are left to conjecture, and it is possible the judgment was rendered upon the ground that the complaint did not state facts sufficient to constitute a cause of action. Assuming, then, that to be the ground of the judgment, we proceed to inquire if it can be sustained.

The administrator *de bonis non* of Charles McDowell, having declined to file a petition for leave to sell his real estate to make assets for the payment of his debts, this action, in the nature of a creditor's bill, is brought against the said administrator and the devisees, to sell the land devised, to make assets for the payment of the debts of the testator, and among them the debt of the plaintiffs, which was reduced to judgment in 1869.

The judgment was *quando*, and so considered by the parties after the amendment of the record in the case by Judge Cloud, and it was so held to be by this court in the case of *Walton* v. *Pearson*, 85 N. C., 34.

Before the act of 1846, the lands of a decedent could not be sold for the payment of his debts after such a judgment, because when an administrator who was then sued, pleaded fully administered, and the plea was established by proof or admitted, the creditor was put to his election, to take a judgment *quando acciderint*, or sign judgment for the amount of his debt, and proceed by *scire facias* against the heirs or devisees to subject the land descended or devised to the satisfaction of his judgment. If, however, he made the election to take a judgment *quando*, he could not proceed against the heirs or devisees, for he had taken his chance to realize his debt from assets that might thereafter come to the hands of the administrator. As the law then stood, the administrator had no concern with, or control over, the lands of his intestate. *Martin* v. *Harding*, 3 Ired. Eq., 603.

But the act of 1846 changed the law in this respect, and empowered the executor or administrator, when there was an insufficiency of assets to pay the debts of the deceased, to sell the lands descended or devised, after obtaining a license therefor from the Superior or County Court; and the act further provided that the proceeds of the sale should be deemed legal assets for the payment of debts. But lands are held not to be assets until they are sold and the proceeds received by the administrator—*Vaughan* v. *Deloatch*, 65 N. C., 378; *Hawkins* v. *Carpenter*, 88 N. C., 403, and *Fike* v. *Green*, 64 N. C., 665—and it is

still an open question whether an administrator can be sued on his bond, when he has been guilty of negligence in not applying for and obtaining an order to sell the real estate of his intestate. But when there is a deficiency of assets, it is nevertheless the duty of the administrator to take the necessary steps prescribed by law to sell the real estate of his intestate for the payment of his debts, and when he refuses so to do, he may be compelled by the clerk of the Superior Court to perform the duty, or the creditor, as in this case, may bring an action in the nature of a creditor's bill against him and the heirs-at-law or devisees, as the case may be, for sale of the land under the equity jurisdiction of the court. That jurisdiction still exists.   *The Code* has not taken away from the Superior Courts any jurisdiction heretofore exercised by Courts of Equity, except, perhaps, in cases exclusively within the jurisdiction of justices of the peace—*Wadsworth* v. *Davis*, 63 N. C., 251—and the Courts of Equity have always entertained jurisdiction of creditor's bills, upon this subject—*Allison* v. *Davidson*, 1 Dev. & Bat. Eq., 46; *Simmons* v. *Whitaker*, 2 Ired. Eq., 129, and *Martin* v. *Harding*, 3 Ired. Eq., 603—and especially in cases like this, "when the deficiency in personal assets resulted from accident, after they had come into the hands of the administrator, as here alleged by emancipation, &c., the courts of law (formerly) were not competent to order a sale of lands to pay debts, but that application must be made to a Court of Equity." *Finger* v. *Finger*, 64 N. C., 183.   So that in whichever way the assets derived from the sale of the lands are realized, after judgment *quando*, they are applicable to its satisfaction.

Here the plaintiffs allege they have a judgment against the estate of Charles McDowell and the administrator declines to file a petition for the sale of the land; that the assets of the estate have been exhausted by the payment of debts and the emancipation of the slaves and other casualties of the war; and that the defendant's devisees, have lands in their possession devised by Charles McDowell, the testator.   This, we think, is a statement of facts sufficient to constitute a cause of action, and if His Honor

rendered judgment upon that ground, there is error. But if we are mistaken in our conjecture as to this being the ground upon which the judgment was rendered, there is still error in the judgment of the court below.

There are several issues of fact squarely raised by the pleadings. The plaintiffs allege that the assets have been exhausted by the payment of debts, &c. This, the defendants deny, and aver that there came to the hands of N. W. Woodfin, assets sufficient to pay all the debts of the testator, which were wasted by the said Woodfin, and they further insisted that the plaintiffs' action was barred by the statute of limitations. These are issues of fact, which His Honor had no right to decide, unless upon an agreement of counsel that His Honor might decide the whole case upon the law and facts. But the record does not show that there was any such agreement. It was, therefore, error in not submitting these issues to the jury.

It is with some reluctance we grant a new trial in this case, and only do so in consideration of the large interest involved. And should the case again come before this court, as it is probable it will, it is to be hoped the record will be presented in a more orderly and intelligible form.

The judgment of the Superior Court is reversed, and this must be certified to that court that a new trial be had.

Error. Reversed.