J. W. WILSON and S. McD. TATE v. RICHMOND PEARSON, Executor of R. M. PEARSON.

*Practice—Pleadings—Waiver—Amendment—Of Pleadings— Of Records—Administration—Before July,* 1869*—Action on Administration Bonds—Statute of Limitations—Of Presumption of Payment—Supreme Court—Amendment of Pleadings.*

1. A defendant having proceeded to answer, &c., without reference to a demurrer previously filed, is held to have waived it.

2. Though a party has the right to demand that his plea in bar shall be passed upon before a reference of the action, otherwise requiring a reference, he waives the right by not insisting upon it before reference ordered.

3. Though no sufficient cause of action was set forth against defendant in the original complaint, the general purpose of the action appearing, he cannot be heard to complain after amendment without objection by him.

4. The original administration of one's estate having been granted before July, 1869, a creditor could bring suit against his personal and real representatives and have an account taken, so that a decree should be rendered against the one or the other as in equity entitled.

5. Though a Judge has the right to amend the record in the Court below so as to make it speak the truth, he has no power to make any amendment that would affect the records of this Court; an appeal from a judgment in an action against an administrator, begun before 1869, having vacated a judgment absolute in this Court, conclusively fixes him with assets.

6. Though an administrator *d. b. n.* is the proper party to bring suit to collect assets to pay the debts of the estate, his refusal to do so, without indemnity, makes it competent for the creditors to sue, making him a party defendant, either under § 185 of *The Code* or the former equity practice.

7. When, in a former action, it was agreed in writing, at Spring Term, 1882, that plaintiff might take a nonsuit and enter the same in vacation, and at Spring Term, 1883, a nonsuit was entered without objection, *nunc pro tunc*, as of Fall Term, 1882, the defendant cannot, in the present action, brought to Spring Term, 1883, impeach the order collaterally and avail himself of the pendency of the former action as a defence.

8. The action having been brought for a breach of an administration bond, the cause of action is the original debt, and not a judgment theretofore taken fixing the administrator with assets.

9. A party is charged with a knowledge of all that transpires and is made of record in the progress of the action, and of all pleadings and admissions of facts by his counsel.

10. The failure of an administrator to faithfully administer the assets that come, or ought to come, into his hands, constitutes a breach of his official bond, which can be cured only by actual payment, and the cause of action on the bond is not merged in a judgment obtained against the administrator for a debt due the plaintiff.

11. The statute of presumption of payment, and not the statute of limitations, is applicable to an action on an administration bond executed in 1859 and for a breach prior to August 24, 1868, (*The Code,* § 136), and the action being brought within ten years, and judgment given, with the intervention of less than a year after nonsuit, the plea of the statute cannot avail a surety.

12. An objection in this Court that the action on an administration bond was not brought in the name of the State may be obviated by a motion to amend, under § 965 of *The Code*; but, under the circumstances of this case, on terms that plaintiffs pay all costs.

CIVIL ACTION, tried before *Boykin, J.*, at August Term, 1887, of the Superior Court of BURKE County, and heard upon the report of the referee (to whom the cause had been referred) and exceptions thereto. There was judgment confirming the report, and the defendant, Richmond Pearson, executor, &c., appealed.

The action was commenced by summons issued on the 8th day of February, 1883, against John Gray Bynum, administrator *d. b. n.* of Charles McDowell, deceased, C. M. McCloud, administrator of N. W. Woodfin, deceased, Richmond Pearson, executor of R. M. Pearson, deceased, Samuel McDowell and others.

The complaint alleges in substance:

1. That Charles McDowell died in 1859, leaving a last will, which was duly proved.

2. That N. W. Woodfin was duly appointed administrator *c. t. a.* of said Charles McDowell, and executed his bond

as such, with John W. Woodfin, W. F. McKesson and R. M. Pearson as sureties.

3. That said N. W. Woodfin died insolvent, and C. M. McCloud is his administrator, and that John W. Woodfin and W. F. McKesson are dead, and their estates insolvent.

4. That R. M. Pearson died, leaving a large estate, and the defendant, Richmond Pearson, is his executor.

5. That on the 25th of November, 1855, W. F. McKesson, Charles McDowell and James McKesson (the last two as sureties), executed their bond, signed and sealed, to W. M. Walton, promising to pay to him or to his order the sum of $2,200.

6. That James McKesson is dead, and his estate is insolvent.

7. That no part of said bond has ever been paid.

8. That the plaintiffs are the assignees and owners of said bond and the debt created thereby.

9. That N. W. Woodfin died in 1876, and John G. Bynum has been appointed and duly qualified as administrator *de bonis non*, &c., of the estate of Charles McDowell.

10. That the outstanding debts against the estate of Charles McDowell, deceased, are between $8,000 and $9,000.

11. That Charles McDowell, deceased, left a large personal estate, consisting mostly of slaves, and the plaintiffs are informed and believe that all the personal estate of the deceased has been exhausted in the payment of debts and by the emancipation of the slaves and other destructive results of the war.

12. That there are no personal assets known to plaintiffs out of which they can obtain payment of their debt, and none have come to the hands of John G. Bynum, administrator, &c., as they are informed.

13. That Mary T. Pearson, and others named, are the heirs and devisees of Charles McDowell, deceased.

14. That Charles McDowell died seized of the lands mentioned in the complaint.

15. That said lands are in the possession of Samuel McDowell (and others named).

16. That John G. Bynum, administrator, &c., of Charles McDowell, has not instituted any legal proceeding to recover any assets, if any there be, from N. W. Woodfin, the former administrator, &c., nor has he instituted any legal proceeding to subject the real estate of said Charles McDowell, deceased, to the payment of the debts of the deceased.

17. That plaintiffs demanded of said Bynum, administrator, &c., before bringing this action, that he should file a petition for sale of real estate, &c., and that he declined to do so.

Judgment is demanded for sale of real estate, and for such other and further relief, &c.

To this complaint the defendant Richmond Pearson, executor, demurred, assigning as cause therefor:

" 1. That no relief is prayed against him in the complaint.

" 2. That the complaint admits that there had been no *devastavit* of the principal of his testator, N. W. Woodfin, administrator, &c., of Charles McDowell, and consequently there is no breach of the administration bond of said Woodfin."

It nowhere appears from the record that this demurrer was ever passed upon judicially, but at the same term of the Court the following order was made:

" In this case, the defendant having filed a demurrer, and the pleadings being under oath, and the defendant Pearson being absent, it is ordered that within 30 days the defendant Pearson be allowed to withdraw his demurrer and file an answer, and he is required to serve the plaintiff with a copy of answer in case he should file the same."

At September Term, 1883, by consent of counsel for all parties (including the defendant Pearson), in writing filed, allegation 5 of the complaint was amended, by adding: "That W. M. Walton brought suit on said bond 15th of March, 1866, and at Fall Term, 1869, obtained judgment thereon, as appears of record in the Superior Court of Burke County."

Allegation 8 was amended so as to read: "That W. M. Walton, by a written assignment, conveyed all his interest in said bond and judgment thereon to S. McD. Tate, and that said interest belongs to the plaintiffs jointly."

Allegation 11 was amended by adding: "Nevertheless, the plaintiffs are informed that the devisees of Charles McDowell, deceased, defendants in this action, deny that the assets of the estate of Charles McDowell have been exhausted or legally applied, and allege that N. W. Woodfin, former administrator, was guilty of a *devastavit* of said assets, and plaintiffs are not able to swear positively how the matter stands."

And the prayer for relief was amended by adding: "That an account be taken of the estate of Charles McDowell, deceased, to ascertain whether the assets have been exhausted or have been legally applied, and how much, if any, assets are still in, or ought to be in, N. W. Woodfin's hands; and if it appears that he was guilty of *devastavit*, that plaintiffs have judgment against his administrator and the security on his bond, to-wit, Richmond Pearson, executor of R. M. Pearson, deceased, and for such further relief in the collection of plaintiffs' debt or claim as may be consistent with the facts found in this case."

To this amended complaint the defendants answer:

"1. That the judgment mentioned, as having been entered and recorded in 1869, is barred by the statute of limitations.

"2. That the judgment aforesaid is dormant, and leave to bring an action thereon was not obtained prior to the bringing of this action.

"And for further answer they adopt the answer of their co-defendant, J. G. Bynum, administrator."

This answer is signed by counsel for defendants, including G. N. Folk, counsel for the defendant Pearson.

Upon the trial of the cause at September Term, 1883, by agreement in writing, allegations 1, 2, 3, 4, 5, 6, 8, 9, 13, 14, 15, 16 and 17 were admitted, and it was also admitted that

N. W. Woodfin, as administrator of Charles McDowell, within less than two years after his qualification, divided among the legatees the greater part of the personal property and took no refunding bonds, and upon being heard "upon the pleadings, the records made part of the facts and the admissions of the parties," judgment was rendered for the defendants, and the plaintiffs appealed. In the Supreme Court (92 N. C., 717), the judgment of the Superior Court was reversed.

At Spring Term, 1886, upon motion of plaintiffs, the case was referred, under *The Code*, to George F. Bason, " to take and state an account of the estate of Charles McDowell, deceased, to ascertain and report whether the assets have been exhausted or legally applied, and how much, if any, assets are still in, or ought to be in, the hands of N. W. Woodfin, administrator of said estate, or in the hands of his personal representative, which ought to be applied to the claim of the plaintiffs, and report," &c.

This order of reference was resisted by J. G. Bynum, administrator, &c., Cora McDowell, Manly McDowell and Thos. Walton and wife, and was made without prejudice as to them.

At the same term it was ordered that J. G. Bynum, administrator, &c., and the McDowell heirs, have leave to amend their answers, and that the " plaintiffs have leave to amend their complaint heretofore filed herein as they may be advised, said amendment to be filed either at the time or before the referee appointed herein to state an account, and upon any amendments to plaintiff's complaint, and the defendants shall have leave to amend their answers in reply to such amendments made by plaintiffs."

And thereupon the heirs of Charles McDowell, defendants, filed an amended answer, with a copy of the judgment of the Supreme Court rendered at January Term, 1870, upon appeal from the Superior Court of Burke County, in the case of " W. M. Walton, plaintiff, against W. F. McKesson, N. W.

Woodfin, administrator of Charles McDowell, and W. F. Mc-Kesson, administrator of James McKesson," and insist that it was a " final judgment absolute " against the defendants in the judgment mentioned in allegation 5 of the amended complaint, and fixed N. W. Woodfin, administrator, &c., with assets sufficient to discharge the same, and that said judgment is a bar to the recovery of the plaintiffs against them.

They further say that the administration bond of said Woodfin was then and still is perfectly solvent, &c.

The plaintiffs filed (August 6, 1886) an amended complaint, admitting that the copy of the record of the judgment of the Supreme Court of North Carolina in the case of Walton *v.* McKesson *et al.*, to be true, and alleging "now that N. W. Woodfin, administrator, &c., of Charles McDowell, had in his hands assets sufficient to pay the plaintiffs' debt, and that he unlawfully distributed them and wasted them, and that the sureties on his bond and their representatives are liable for plaintiffs' debt."

Plaintiffs thereupon demand judgment against the defendant Pearson for the said debt and for such other or different relief as they may be entitled to against all the defendants."

Thereupon the defendant Pearson, executor, &c., filed a separate answer to the "complaint and amended complaints of the plaintiffs," admitting paragraphs 1, 2, 3, 4, 5, 6 and 9 of the complaint.

That allegation 7 is not true, as therein alleged, but, in substance, that the bond set out in paragraph 5 was reduced to judgment at Fall Term, 1869, of the Superior Court of Burke County, in the action of Walton *v.* McKesson *et al.*, and by said judgment merged and extinguished, and that it was a judgment *quando* and not absolute as to N. W. Woodfin, administrator, &c., of Charles McDowell, and an admission of record that he had not and ought not to have had assets of the estate of said Charles McDowell at the date of said

judgment, and that the plaintiffs (assignees, &c.) are estopped from averring that there was a *devastavit*, &c., prior to said judgment.

That he has no knowledge, &c., as to paragraphs 8, 10, 11, 12, 13, 14, 15, 16 and 17 ; and to the amended complaint of the plaintiffs, he answers, in substance, that the judgment mentioned in paragraph 1 of the amended complaint was rendered by the Supreme Court at January Term, 1870, in an action begun in 1866 in the Superior Court of Burke County, in which there was a judgment at Fall Term, 1869, absolute, against W. F. McKesson, individually and *quando*, against N. W. Woodfin, administrator, &c., and that from said judgment W. F. McKesson alone appealed, and that there was no appeal by Woodfin, administrator, &c.

That said judgment on appeal was affirmed at January Term, 1870, of the Supreme Court, and that while it is true that said judgment of the Supreme Court appears to have been entered against W. F. McKesson and N. W. Woodfin, administrator, &c., of Charles McDowell, yet, as said McKesson had alone appealed, the Court had no jurisdiction as to Woodfin, administrator, &c., and no authority to render such judgment as against him, or that it can have the effect to fix said Woodfin, administrator, &c., with assets.

The second allegation of the amended complaint is denied, and it is insisted that even if the plaintiffs were the owners of said judgment, they are estopped from averring that Woodfin had, or ought to have had, assets.

For a further defence it is insisted that the plaintiffs have no right to maintain this action, " but that the administrator *de bonis non, c. t. a.*, is the real party in interest * * * and alone has the right to maintain actions for breaches of said Woodfin's said administration bond."

For a further defence it is insisted that the judgment at January Term, 1870, is dormant, has never been revived,

&c., and the ten years, the six years and the three years statutes are relied on, each as a bar to this action.

For a further defence it is insisted that on the 19th of January, 1874, an action was commenced by W. M. Walton, in the Superior Court of Burke County, upon the administration bond of N. W. Woodfin and the surety thereon, for the " same cause of action and between substantially the same parties " as this, and that said suit was pending till Spring Term, 1883, in the Superior Court of Catawba (to which it had been removed), when the plaintiffs caused a " nonsuit " (as it is styled in the pleadings) to be entered " taken as of Fall Term, 1882," and that this action was begun on the 8th day of February, 1883, pending said action.

For a further defence it is insisted that more than a year elapsed after the entry of said nonsuit before the filing of the amended complaint, seeking to charge the defendant as executor, &c., or asking any relief against him, and that the defendant never gave his consent to the filing of the amended complaint, and that the Court had no power to grant leave to file an amendment that would deprive defendant of the benefit of any statute in respect to the matters alleged in said amendment.

For a further defence, the defendant adopts and sets out as part of his answer a portion of the answer of J. G. Bynum, administrator, &c., in this action, and also the answer of his testator, R. M. Pearson, to the complaint of W. M. Walton *v.* N. W. Woodfin, administrator, &c., *et al.*, but in the view which we take of this case, it is not material to report them here.

The report of the referee, Bason, was filed at March Term, 1887, which was substantially, and so far as material to the questions before us, as follows :

1. That on the 25th of November, 1855, W. F. McKesson executed to W. M. Walton the note under seal for $2,200

(set out in full), with Charles McDowell and James McKesson as su reties.

2. That plaintiffs are the owners of said bond and judgment thereafter taken thereon.

3. That W. F. and James McKesson are both dead, and their estates insolvent.

4. That Charles McDowell died in 1859, leaving a will, and on the 24th of November, 1859, (the executor having failed to qualify) N. W. Woodfin was appointed administrator *c. t. a.*, and gave bond as such, with John W. Woodfin, W. F. McKesson and R. M. Pearson as sureties.

5. That N. W. and J. W. Woodfin are dead, and their estates are insolvent.

6. That J. G. Bynum is the administrator *d. b. n.* of Chas. McDowell, but has no assets, &c.

7. That R. M. Pearson died, leaving a large estate, and the defendant Richmond Pearson is his executor.

8. That Charles McDowell left, besides valuable real estate, "personal property of the value of $31,727, a large portion of which consisted of negro slaves, all of which went into the hands of Woodfin, his administrator, and all of this sum, except some $1,500 paid out on debts of his testator, was either wasted by said administrator or distributed to the legatees named in the will, without taking refunding bonds therefor, leaving the debt of plaintiffs still due and outstanding." It is further found that a part of the property so distributed (more than enough to pay plaintiffs' debt) "was lost by the result of the war."

9. That J. G. Bynum, administrator *d. b. n.*, &c., was, before the institution of this action, "requested by the plaintiffs to bring suit to collect the assets of his testator's estate to pay their debts, but refused to do so without indemnity against costs, as set out," &c.

10. That suit was brought by W. M. Walton in the Superior Court of Burke County on the 15th of March, 1866,

against W. F. McKesson, administrator of James McKesson, and N. W. Woodfin, administrator, &c., of Charles McDowell, on the bond referred to in section one, and at Fall Term, 1869, there was a trial of said cause, and an absolute judgment thereon, &c., from which judgment all the defendants appealed to the Supreme Court. (The verdict of the jury, judgment of the Court and appeal by the defendants, as set out on the minute docket of Burke Superior Court, are set forth in *Walton* v. *McKesson* et al., 101 N. C., 430.)

11. That at January Term, 1870, of the Supreme Court, said appeal was heard, and a judgment absolute in said Court was rendered for the plaintiff against all the defendants, &c.

12. That at Spring Term, 1870, of Burke Superior Court, an entry of judgment, purporting to be according to the certificate of the Supreme Court, was made of record in said cause; but in fact, said entry of judgment was not in accordance with said certificate, which only directed an entry of judgment for costs of Burke Superior Court, while the judgment actually entered was for plaintiff's debt, as well as for costs.

13. That at Spring Term, 1878, of Burke Superior Court, the records of said Fall Term, 1869, of said Court were, by order of Judge Cloud, amended as set out (making the judgment absolute against W. F. McKesson individually, and *quando* as against him as administrator of James McKesson, and *quando* against N. W. Woodfin, administrator, &c., of Charles McDowell), and on the 11th of March, 1879, an assignment of all his right, title and interest in the said judgment was made by W. M. Walton to the plaintiff Tate.

14. That on the 5th of November, 1869, W. M. Walton and one Michaux filed a creditor's bill, in the Superior Court of Burke County, against N. W. Woodfin, administrator, &c., of Charles McDowell and others, for the collection, among others, of the Walton debt, and on the 21st of March, 1870,

an order was made in said cause restraining the creditors of said McDowell from collecting their debts otherwise than as ordered in said cause. R. M. Pearson was made a party defendant on the 19th of December, 1873, and at Fall Term, 1874 (August 24), the cause was dismissed.

15. That on the 19th of June, 1874, W. M. Walton brought suit on the administration bond of N. W. Woodfin, against the said Woodfin, and R. M. Pearson and W. F. McKesson, his sureties, to recover the debt mentioned in section 1. Pending said action Woodfin died, and J. G. Bynum, administrator d. b. n. of Charles McDowell, was made a party, and R. M. Pearson having also died, Richmond Pearson, his executor, came in at March Term and made himself a party defendant.

At March Term, 1879, the cause was removed to Catawba. Superior Court, and the present plaintiffs were made parties. At Spring Term, 1879, there was a trial and judgment, from which both parties appealed to the Supreme Court (see case in 82 N. C., 454; 83 N. C., 309, and 85 N. C., 34).

At Fall Term, 1881, of Catawba Superior Court, the opinion of the Supreme Court was filed, and the case continued without an entry of judgment, according to the certificate of the Supreme Court.

At Spring Term, 1882, " by consent of all parties," signed by their counsel, it was agreed that the plaintiffs have leave to take a nonsuit and " enter the same in vacation between this and Fall Term, if they desire."

At Fall Term, 1882, the case was continued, and on the 6th day of February, 1883, two days prior to the bringing of this action, a " nonsuit " was entered of record in vacation, by the plaintiffs, and afterwards, at Spring Term, 1883, (last Monday in February), an entry of " nonsuit" was made as of Fall Term, 1882, and the costs for which the plaintiffs were liable were paid.

16. That on the 14th of August, 1875, W. M. Walton brought suit against R. M. Pearson, to follow assets of the estate of Charles McDowell in his hands (value of certain slaves). At Spring Term, 1876, J. G. Bynum, administrator, &c., of Charles McDowell, and others, were made parties defendants. At Spring Term, 1878, the death of R. M. Pearson was suggested, and Richmond Pearson, his executor, made himself a party defendant, and at Spring Term, 1879, the present plaintiffs were made parties plaintiffs.

The cause was continued from term to term, till Spring Term, 1882, when the same order as to nonsuit, &c., was entered as in Walton *v.* Woodfin (in preceding section), and on the 6th of February, 1883, in vacation, and at Spring Term, 1883, similar entries of nonsuit were made as in that cause.

No objection appears to have been taken, and there was no appeal therefrom.

17. That the plaintiff's debt (principal and interest), amounts to $6,329.40, is still due and unpaid, and, so far as the evidence shows, is the only outstanding debt against the estate of Charles McDowell.

18. That the assets that came into the hands of N. W. Woodfin, administrator, &c., and wasted or distributed, amount (with interest added) to $79,400, "all of which ought now to be in the hands of the present representative of Charles McDowell."

Conclusions of law:

1. The evidence offered by the plaintiffs and the McDowell heirs, defendants, tending to show a distribution of the slaves of the estate of Charles McDowell, by Woodfin, administrator, &c., among the legatees under the will, without taking refunding bonds, was competent to show *devastavit,* &c., and the objection thereto by the defendant Pearson was overruled.

2. The evidence offered and objected to, tending to show a sale of said slaves by Mrs. Pearson or Judge Pearson, after such distribution, was competent to show that they were not lost by the results of the war.

3. (The third conclusion of law relates to the amendment of the record by Judge Cloud at Spring Term, 1878, of Burke Superior Court, and the exception thereto having been sustained by his Honor below, it, and the exception thereto, need not be stated here.)

4. As a final judgment absolute was rendered in the Supreme Court, at January Term, 1870 (case 64 N. C., 154), there was properly no judgment of record in the Superior Court of Burke to be amended into a *quando* judgment.

5. Said judgment having been absolute, fixed the administrator with assets.

6. The plaintiffs' cause of action, having accrued prior to *The Code*, is not affected by the statute of limitations, and the statute of presumption having been rebutted, the plaintiffs have a right to recover, new suit having been brought within one year after nonsuit, &c.

7. The plaintiffs having requested the administrator *de bonis non* to bring action, &c., and he having refused to do so unless indemnified, the plaintiffs had a right to bring action against him and the other defendants, under § 185 of *The Code*, and if not, it appeared upon the face of the complaint and should have been taken advantage of by demurrer, and he finds that the plaintiff is entitled to recover.

The defendant Pearson, executor, filed numerous exceptions, 36 in number, covering many pages of the written record, besides numerous others taken before the referee, but the 1st, 2d, 3d and 4th were abandoned in this Court, and only so much of the substance of the others is stated as in the view of the case taken by the Court is material.

The 5th exception, the first relied on, is to the power of the referee, under the order of reference, to consider or take

into the account any assets that came or ought to have come into the hands of N. W. Woodfin, administrator, &c., prior to the judgment at Fall Term, 1869, of Burke Superior Court, or before the judgment of said Court at Spring Term, 1870, or to consider any matters except the assets which came or ought to have come into his hands since the Fall Term, 1869, of said Court.

The 6th, 10th, 11th, 13th, 14th, 15th, 16th, 17th, 18th, 19th, 20th, 21st, 24th, 25th, part of 26th, 27th, 28th, part of 29th, 30th and 31st, which are set out at great length and argumentatively, are based upon the assumption that the judgment of Fall Term, 1869, was a judgment *quando* as to Woodfin, administrator, &c., of McDowell; that the plaintiffs acquired, by the assignment to them, nothing but the judgment *quando;* that the testimony objected to in the several exceptions, upon which the referee acted, was irrelevant and incompetent, because the judgment *quando* was an admission that there was, up to the time of said judgment, no *devastavit,* and that the personal assets had been legally exhausted; that the several findings of fact and conclusions mentioned in said exceptions were not within the province of the referee; were immaterial and irrelevant, supported by no competent evidence; that the plaintiffs are estopped by their allegations in seeking to subject the real estate to the payment of their debt, from alleging a *devastavit,* &c., and if they were not, that an action for the *devastavit* could only be brought by the administrator *de bonis non* of Charles McDowell; and further, that the nonsuits taken in February, 1883 (both that attempted to be taken in vacation and that entered in term-time as of Fall Term, 1882), were irregular, illegal and void.

The 7th exception is, that the referee treated the action as one against the defendant, on the administration bond of N. W. Woodfin, administrator, &c., and took into consideration the alleged amendment of August 6, 1886, which changed

the nature of the action, introduced a new cause of action, and that neither the Court nor the referee had authority to take or allow such amendment, and that at the time of said amendment there was no action against this defendant; and further, that if there was any such judgment in the Supreme Court as that referred to in said alleged amendment, there was no evidence that the plaintiffs owned it.

The 8th exception is "that the order of reference was improvidently made and premature, in that the defences in bar of the action were undisposed of, and said order of reference was erroneous and irregular."

The 9th exception is " that the first finding of fact by the referee is against the weight of evidence, contrary to the allegations of the complaint, without evidence to support it, and the finding is ' immaterial and without the province of the referee, and there is no competent evidence of bond not paid.' "

The 12th exception is to the 9th finding of fact as immaterial, outside the province of the referee, "contrary to the weight of evidence, and without evidence to support it."

The 22d and 23d exceptions are to the 17th and 18th findings of fact, as without the province of the referee, upon a matter adjudicated to the contrary (as to the 18th finding), and which the plaintiffs are estopped to controvert, &c.

The 32d exception is that the referee should have found " that the complaint does not state facts sufficient to constitute a cause of action against this defendant."

The 33d exception is " to the admission of the testimony of G. N. Folk as irrelevant and inconsistent, and to the admission in evidence referred to in the testimony taken by the referee as the admission of facts filed in the case.

The 34th exception is to that part of the testimony filed by the referee, " which purports to be and is a copy of the testimony taken, and not the original."

102—20

"*Exception* 35. The referee finds in the eighteenth finding of fact that assets found to have been wasted by Woodfin, administrator, ought now to be in the hands of the representative of Charles McDowell ; and yet further finds in the sixth finding of law, that this defendant is liable for so much thereof as will pay the amount claimed by these plaintiffs to these plaintiffs, and that these plaintiffs can maintain this action in their own names to recover the same against this defendant. Such findings of law upon such findings of fact cannot be, and are not correct."

The 36th exception is substantially, and at much length, a recapitulation of the other exceptions, and is fully and in detail covered by them, and need not be repeated here.

So much of exceptions 26 and 29 as are not covered by the summary were sustained, and need not be referred to. The other exceptions were overruled.

The Court held that the cause of action was not barred by the statute of limitations, nor was there payment under the statute of presumptions, and that the evidence of Tate and Walton, exception to which (29) was sustained, on this point was immaterial.

The Court further held that the plaintiffs were not entitled to judgment against the McDowell heirs, and gave judgment, as to them, for costs against the plaintiffs.

There was judgment against Richmond Pearson, executor, for $50,000 (the penalty of the bond of Woodfin, administrator, &c., to which R. M. Pearson was surety), to be discharged on the payment, &c.

From this judgment the defendant Richmond Pearson, executor, &c., appealed.

*Messrs. D. Schenck* and *Batchelor & Devereux,* for the plaintiffs.

*Messrs. F. A. Sondley* and *Armistead Jones* for the defendant.

DAVIS, J. (after stating the case). The purpose of this action is to recover a debt originally due by note, under seal, executed by W. F. McKesson, with Charles McDowell and James McKesson as sureties. Actions to recover this debt have been pending in some form, against parties sought to be held liable for its payment, since March, 1866. After various amendments and many irregularities and inconsistencies in the pleadings, which perhaps would have been fatal to the action if objection had been taken and insisted upon in apt time, but which were either waived or cured by amendments, it has now assumed the simple character of an action against the representative of the only solvent surety on the administration bond of N. W. Woodfin, administrator of Charles McDowell, for a *devastavit* and misapplication of assets.

In one form or another its subject-matter has been frequently before this Court, as will be seen by reference to 64 N. C., 154; 82 N. C., 464; 83 N. C., 309; 85 N. C., 34; 92 N. C., 717, and 101 N. C., 428.

When it was here at February Term, 1885 (92 N. C., 717), ASHE, J., characterized the record, "interspersed with its numerous amendments," as "obscure, inconsistent, and voluminous," and after the new trial granted at that term, and to meet the defects then suggested, it was again amended (both the complaint and the answers), and to the order allowing the amendments there was, at the time, no objection— certainly no exception noted and no appeal taken or right of appeal reserved, and whether the amendments ought or ought not to have been allowed are not now questions for our consideration.

It is said by counsel: "The plaintiff had complained; Pearson had answered by demurrer; no reply thereto had been or ought to have been filed for three years; this was the end to the pleading between them." This might have been so, but for the fact that at the first term after the demurrer was filed (September Term, 1883), by *consent*, the

complaint was amended, an *answer* filed, there was a trial, a judgment and an appeal to the Supreme Court. That the demurrer (if not passed upon) was thus waived, it seems too plain to need the support of authority.

It is insisted by counsel for the defendant that " the reference in this action was compulsory and irregular, because it prescribed a determination of the matters pleaded in bar, to-wit: the statute of limitations; that the action was brought in the wrong name; the pendency of another action between the same parties and for the same purpose at the commencement of this action, and the existence of a judgment *quando ;*" and for this he cites numerous authorities.

The authorities cited clearly show, and it cannot be questioned, that the defendant had a *right to have ang plea in bar passed upon, before the reference was ordered,* but, if he wished to avail himself of that *right, it was his duty to have insisted upon it before the reference was ordered.* This is well settled *Grant* v. *Hughes,* 96 N. C., 177, and the cases there cited

The order of reference was resisted by J. G. Bynum, administrator, &c., and the McDowell heirs, and was " without prejudice as to them," but there was no objection by the defendant Pearson, and as to him, it " was equivalent to assent and a waiver." *Grant* v. *Hughes, supra.*

But it is insisted that when the order of reference was made, the defendant Pearson could not object, because there "was no case stated " as against him, as that was settled by the judgment *quando.* One of the objections now urged against the reference is that the question, whether there was a judgment *quando,* was, among others, not passed upon before the reference was ordered.

But the defendant was a party to the action, made no objection to the order, and the very purpose, and the only purpose of the reference, was to ascertain whether the assets in the hands of Woodfin, administrator, &c., (to whose bond the defendant's testator was surety) had " been exhausted or

legally applied," and if he assented to the order of reference, or made no objection and took no appeal, as he had a right to do, he cannot now be heard to object.

The same may be said in regard to the amended complaint of August 6, 1886. If the defendant had any objection to the order allowing the amendments, it should have been then taken.

But it is insisted that the "referee treated this action as one against this defendant brought on Woodfin's administration bond," and the Court had no right to "permit an amendment which changes the nature of the action, makes a misjoinder of causes of action inconsistent in themselves, and inconsistent with the action originally begun, and with the admissions of the complaint."

The defendant's testator, R. M. Pearson, was made a party defendant in the creditor's action instituted by Michaux and others, and also in the action brought in June, 1874, by W. M. Walton, on the administration bond of N. W. Woodfin, in both of which the recovery of the debt now sued on was attempted, and when this action was brought the present defendant, his executor, was made a party defendant.

If liable at all, it could only be on the administration bond, and so far as the defendant is concerned, no action could be brought except on the administration bond. However defective the original complaint may have been in failing properly to allege a cause of action against the defendant, and in failing to demand, specifically, judgment against him, the purpose of the action has been apparent. The defendant was made a party with the heirs-at-law for some purpose, and allegations in the complaint show what the purpose was.

It is alleged that Charles McDowell died; that Woodfin was appointed his administrator; that the defendant's testator was surety on his administration bond ; that McDowell, in his life-time, was one of the sureties to the debt for the recovery of which this action is brought; that all the per-

sons or their estates liable for said debt, except McDowell's estate, are insolvent, and that no part of the debt has been paid; and, by an amendment by consent of all parties, for the purpose of ascertaining whether the assets in the hands of Woodfin, administrator, &c., have been legally applied or exhausted, an account is asked for, to the end that, if it shall appear that there was a *devastavit,* the plaintiffs may have judgment against the defendant Pearson, executor, &c.

The defects in the complaint were not such as, in the absence of objection, to defeat the action altogether, and when amended by consent or without objection, as they were, they were cured.

The original administration on the estate of Charles Mc-Dowell was granted prior to the 1st day of July, 1869, and, except so far as relates to the courts having jurisdiction, "is to be dealt with, administered and settled according to the law as it existed just prior to that date." *The Code,* §§ 1433 and 1476.

According to the law as it then existed, a creditor in a court of equity could, by a proper bill, obtain an account of the personal and real estate of his deceased debtor and have a decree for the payment of his debt, out of the proper fund. *Martin* v. *Harding,* 3 Ired. Eq., 603 ; *Finger* v. *Finger,* 64 N. C., 183. Of course, in such an action it would be necessary to have the real as well as the personal representative before the Court, and the one or the other would be charged with the payment of the debt, as, upon the statement of the account, it might appear that the one or the other was liable.

This action may be treated as a bill to ascertain, by an account, whether the real or personal representatives of Charles McDowell are liable for plaintiffs' debt, and this seems to have been the view taken in this Court, when the judgment was reversed at February Term, 1885 (92 N. C., 717, and cases there cited).

There was but one cause of action in the original complaint, or as amended, and that was the liability of the estate of Charles McDowell for the plaintiffs' debt, and if liable, whether that liability should rest upon the personal or real representatives, required the equitable aid of the Court to determine. After the amended answer of the heirs of Charles McDowell, in which it appeared that there had been an absolute judgment final, fixing liability upon the personal representative, the plaintiffs very properly abandoned all claim as against them, and sought judgment against the defendant only.

The amended complaint was a reply and not an amendment, so far as it related to the amended answer of the Mc-Dowell heirs, admitting the truth and effect of their amended answer; but so far as it related to the defendant Pearson, executor, &c., it was an *amendment*, alleging, directly, that Woodfin, administrator, &c., had distributed and wasted assets applicable to the payment of their debt, and that the sureties on his administration bond were liable, &c. No new cause of action was alleged, but so far as the heirs of Charles McDowell were concerned, it was conceded that when the record of the judgment in the Supreme Court was filed, that they were not liable, and that no judicial decree was necessary as to them, and the action was thereafter against the defendant Pearson, executor, alone.

It is not the least singular fact connected with this action, the record in which one of our predecessors said "constituted a moderate sized volume," and which, we may add, has, with its age, greatly increased its proportions as well as its "irregularities, obscurities and inconsistencies," that the judgment of the Supreme Court at January Term, 1870, should have been so strangely overlooked by counsel on all sides. We do not know how to account for it, unless it be to prove by the exception the truth of the utterance of the wise man, that "in the multitude of counselors there is safety," for in

looking through the record it will be seen that there have been more than a score of counselors engaged, at one time or another. It may be, however, as they were not all engaged at the same time, the confusion resulted from a failure on the part of succeeding counsel to properly apprehend the plan of attack and defence arranged by their predecessors.

The first exception relied on was the 5th, and it may be considered with those numbered 6, 10, 11, &c. These exceptions rest mainly upon the assumption that the judgment rendered at Fall Term, 1869, of Burke Superior Court, as amended by order of Judge Cloud at Spring Term, 1878, was a judgment *quando*, and conclusive as to all questions relating to assets and *devastavit* prior to that time, and that all the evidence objected to was irrelevant.

Much of the very elaborate and learned brief of Mr. Sondley, which does great credit to his ability as well as to his industry, relates to the effect of the judgment *quando*, and the power of Judge Cloud to make the amendment. Whatever may have been the power of the Judge in regard to the record of the Superior Court (and he unquestionably had the power to amend the record properly in that Court), he certainly had no power to make any amendment that would affect the records of *this* Court, and (though it seems not to have been known) the final judgment was in this Court. The appeal having been taken, there was no judgment in Burke Superior Court which the Judge could amend, and we regard all questions relating to this branch of the case as settled by the decision of this Court directly upon the question—*Walton* v. *McKesson* et al., 101 N. C., 428—and we content ourselves with reference to it.

It is insisted, however, that it is settled in *Walton* v. *Pearson*, 85 N. C., 34, that Judge Cloud had the right to make the amendment in the Superior Court of Burke, so as to declare it a judgment *quando*, and that this is conclusive. However this might have been as a question of *res adjudicata*,

if judgment had been entered in that case in conformity with the opinion of the Supreme Court, it was not done, and a judgment of "nonsuit" was taken by consent, or without objection, and a new action brought; and it now appears that there had been an appeal from the judgment sought to be amended by Judge Cloud, and a judgment absolute and final in this Court, which facts did not appear when this case was before the Court at October Term, 1881 (85 N. C., 34).

But it is insisted that the plaintiffs are estopped by their allegations, in seeking to subject the real estate to the payment of their debt, from alleging a *devastavit*, &c. As we have seen, this is an action equitable in its nature, and the plaintiffs had a right to have an account in order to ascertain whether the real or personal representatives of Charles McDowell were chargeable with the payment of their debt, and if there was any inconsistency in the allegations it was cured by the amendments, and the very purpose of the account was to determine whether there was or was not a *devastavit*.

But it is said that an action for such a purpose could only be brought in the name of the administrator *de bonis non* of Charles McDowell.

It is undoubtedly true, as the authorities cited by the defendant abundantly show, that, nothing else appearing, the action should have been in the name of the administrator *de bonis non*. This is well settled in this State, though a different rule prevails elsewhere. See *Merrill* v. *Merrill*, 92 N. C., 657, and the cases there cited; also *Tulburt* v. *Hollar*, at this term. But it is in this case found as a fact that the administrator *de bonis non* was, "before the institution of this suit, requested by plaintiffs to bring suit to collect the assets of his testator's estate to pay their debts, but refused to do so without indemnity against costs." He was a necessary party, either as plaintiff or defendant, and whether under sec-

tion 185 of *The Code,* or under the old equity practice, he could be made a party defendant. *Smith* v. *Sheppard's Heirs,* 2 Hay., 163 (349); *Hardy* v. *Miles,* 91 N. C.,·131; *Lunn* v. *Shermer,* 93 N. C., 164, and cases cited. Besides, the alleged defect appearing upon the face of the complaint, if relied on, it should have been by demurrer. *Lunn* v. *Shermer, supra; Davidson* v. *Elms,* 67 N. C., 228.

Under the old equity practice, all parties whose rights or interests were involved were required to be brought in, and now creditors may bring special proceedings against the personal representatives (*The Code,* § 1448); and if it shall appear at any time that the personal assets are insufficient, the heirs or devisees may be made parties. *The Code,* 1474.

It is insisted that when this action was commenced, February 8, 1883, another action was pending between substantially the same parties and for the "same cause of action as this," and that the "nonsuit" taken in that action, in vacation, February 6, 1883, and also the "nonsuit" taken thereafter at the February Term, 1883, were void. At Spring Term, 1882, it was agreed in writing, "by consent of all parties," "that the plaintiffs have leave to take a nonsuit and enter the same in vacation, between this and Fall Term, if they desire." This was not done, but, without objection, there was a "nonsuit" entered at Spring Term, 1883, *nunc pro tunc,* as of Fall Term, 1882.

Whether this was to carry out the written agreement of the parties, made at Spring Term, 1882, or not. it was, in effect, as much a part of the proceedings of Fall Term, 1882, as if *then* made, and the defendant cannot impeach it now collaterally.

The 7th exception was properly overruled. It is based, it seems, upon the misapprehension that the action was brought on a judgment, whether *quando* or not, and that the amendment of August 6, 1886, introduced a new cause of action; whereas, the only cause of action against the defendant, from

the issuing of the summons, was on the administration bond, and this sufficiently appeared, though indefinitely stated, in the first complaint; besides, there was no objection to the order allowing the amendment.

The plaintiffs' action, so far as the defendant is concerned, is for a breach of the administration bond, in distributing and wasting the assets without paying plaintiffs' debt; the judgment was evidence—not the cause of the action. Being a judgment absolute, it fixed Woodfin, administrator, &c., with assets.

The 8th exception relates to the order of reference, and has already been disposed of.

The 9th exception relates to the first finding by the referee. The finding is fully sustained by admissions in the record, the fact found is alleged in the complaint, it was within the scope of the order of reference, and there was no evidence that the bond was paid, and the exception was properly overruled. The assignment carried with it whatever interest Walton had.

The 12th exception relates to the 9th finding of fact. The finding was material, in that it was proper that the action should have been brought in the name of the administrator *de bonis non*, unless he declined or failed to do so after request, when he might be made a party defendant. It was within the scope of the reference, it was supported by evidence, the defendant Bynum having testified that he never intended to bring any suit on Woodfin's bond unless indemnified.

But, as already said, the objection relates to a party to the action, and this appearing on the face of the pleadings, should have been taken by demurrer, so, in any event, the fact found could not be objectionable.

The 22d and 23d exceptions are to the 17th and 18th findings of fact. Both findings were clearly within " the prov-

ince of the referee," and as to the 18th, there has been no "adjudication to the contrary," as the judgment was absolute and not *quando.*

The 32d exception is to a failure of the referee to find a conclusion of law which was not within his province; and the exception was properly overruled.

The 33d exception relates to the admission of the testimony of Folk. His testimony covers eight pages. No exceptions were taken at the time, either to the competency of the witness or the admissibility of his evidence, and this broad exception cannot be considered. It is proper, however, to state that the defendant, being a party to the action, is charged with a knowledge of what transpired, and was made of record in its progress, and he is bound by the pleadings and admissions of fact filed in the cause. Folk was his counsel of record, and he was charged with a knowledge of that fact, as well of the pleadings and admissions filed.

We are unable to see the force of the 34th exception. It does not specify the testimony objected to, and there is nothing to direct our attention.

The 35th exception is that the 18th finding of fact and the 6th conclusion of law are inconsistent. The *fact* that assets, wasted by Woodfin, administrator of Charles Mc-Dowell, *ought* to be in the hands of the defendant J. G. Bynum, administrator *de bonis non* of Charles McDowell, is not inconsistent with the *legal conclusion* that the plaintiffs are entitled to have their debt paid by those liable for the wasted assets, which were applicable to the discharge of the debt; and as they are not in the hands of the present personal representative, the plaintiffs can (he having failed to collect them) maintain an action against him and the sureties on his predecessor's bond, to subject them to the payment of their debt.

It is insisted that the note on which action was brought in 1866 was the original cause of action, and that it was merged in the judgment rendered at Fall Term, 1869, of Burke Superior Court, and is barred by the statute of limitations. This is a misapprehension. As to the defendant Pearson, this action is on the administration bond of Woodfin, to which his testator was surety. When the case of *Walton* v. *Pearson* was before this Court, 1881 (85 N. C., 34), it was said : " The defendant insists that, having obtained a judgment against all the makers of his note, it became merged in the judgment, as being a security of higher dignity, and could not therefore constitute a good cause of action in any suit subsequently instituted, and hence he argues that the plaintiffs can only complain of the non-payment of the judgment as a breach of the administrator's bond, and as that was obtained in 1869, the case falls under section 34 of C. C. P. (*The Code,* § 155), which limits actions against the sureties of executors, administrators and guardians on the official bond of their principal to three years after the *breach thereof complained of.* We cannot yield our assent to the position assumed by the defendant or the conclusion he deduces therefrom. Every administrator owes the duty of faithfully administering the assets that come to his hands, and any default in that duty constitutes a breach of his official bond, which then and there gives to the creditors and others interested in a proper administration a sufficient cause of action against him and his sureties ; and this breach of his bond can be cured only by a full satisfaction or by a release. Very sure it is, we think, that it cannot be cured, or in any wise affected, by any change short of actual payment, which may occur in the mere character of a claim against the estate. The dereliction of duty for which the administrator and his sureties are chargeable, and the one assigned, is the misapplication of assets of the estate in December, 1859, by making distribution thereof amongst

the legatees, without taking refunding bonds from them; and the moment this occurred each creditor had a right, the plaintiffs among them, which right continued to subsist, notwithstanding his claim against the estate might subsequently assume the shape of a judgment." It was then adjudged that, for purposes of action for breach of the administration bond, the doctrine of merger has no effect.

This action is on an administration bond executed in 1859, and for a breach prior to August 24, 1868, and the statute of presumptions, and not the statute of limitations, applies. *The Code,* § 136.

The question of the statutory bar is settled by the case in 85 N. C., 34, and this action was brought within less than one year after the nonsuit taken in that case. But the statute only raises a presumption of payment, which may be, as was, rebutted.

The original action to recover this debt from the McDowell estate was within ten years (deducting the time during which the statute was suspended), and it has been persistently pressed ever since; for immediately after the last " nonsuit," a new action was commenced, and if such a thing as continual claim could rebut a presumption it would avail in this case. The continued pendency of actions, less than a year intervening after nonsuit, defeats the plea of the statute.

The defendant moves in this Court to dismiss the action because, the bond being payable to the State, the action should have been in the name of the State, and insists that this defence was taken before Boykin, J., in the trial below; and in answer to this motion, the plaintiffs move to amend so as to sue in the name of the State to the use of the present plaintiffs, and insist that the objection is taken here for the first time.

The objection does not go to the merits of the case, and, without passing upon the conflicting affidavits, we think the

case a proper one, under § 965 of *The Code,* for the exercise of the power of amendment, and the motion of plaintiffs is allowed    *Grant* v. *Hughes,* 94 N. C., 760.

But, for this amendment, the plaintiffs must pay the entire costs of the action.   Under the peculiar circumstances that have marked the progress of the cause, we think it is proper that they should be required to do so.

We think, upon an examination of the record, that there is no error in the ruling of his Honor below, and the judgment is affirmed.

No error.                                  Affirmed.